# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RAMAS CAPITAL MANAGEMENT, LLC,<br>GANESH H. BETANABHATLA,<br><br>Defendants. | C.A. No.:  4:22-cv-2979<br><br>Jury Trial Demanded |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("SEC") files this Complaint against Defendants Ramas Capital Management, LLC ("RCM") and Ganesh H. Betanabhatla ("Betanabhatla") (collectively, "Defendants"), and alleges as follows:

## SUMMARY OF THE ACTION

1.      While acting as investment advisers to a private investment fund they formed, Ramas Energy Capital IV, L.P. ("Fund IV"), RCM and its owner and principal, Betanabhatla, defrauded Fund IV's only investor and breached their fiduciary duties to the fund.

2.      To induce the investor to invest $1 million in Fund IV, Defendants falsely claimed that: (a) they had already raised at least $25 million dollars for the fund; (b) the fund would use investor funds to make equity investments in a specified Texas-based oil and gas company ("Portfolio Company"); and (c) a well-known and respected energy investor that Betanabhatla identified by name was involved in the fund and supported the investment.

3.     None of these representations were true.  Defendants had not actually raised any money for Fund IV, the fund did not make any equity investments in the Portfolio Company, and the well-known energy investor was not involved in the fund.  Instead, within days of receiving the $1 million, Defendants -- in direct violation of the promises they made to the investor and contrary to Fund IV's stated investment purpose -- transferred most of the investor's money to a completely different, undisclosed, and now non-operating oil and gas company in a failed attempt to bail out one of Defendants' earlier (and larger) investment funds.  As a result, the investor suffered a complete loss of his $1 million investment in Fund IV.

4.     By this misconduct, Defendants violated the antifraud provisions of the federal securities laws.  The SEC brings this action seeking permanent injunctive relief, disgorgement of ill-gotten gains plus prejudgment interest, civil penalties, and all other equitable and ancillary relief the Court deems necessary.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)], Sections 21(d), 21(e), and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e), and 78aa(a)], and Sections 209(d) and 214 of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-9(d) & 80b-14].

6.     The limited partnership interests offered, purchased, and sold, as alleged herein, are investment contracts, and thus securities under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c].

7.     Defendants, directly or indirectly, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

8.     Venue is proper in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].  Certain of the transactions, acts, practices, and courses of business constituting violations of the federal securities laws occurred within this district. Defendants also reside and transact business in this district.

## DEFENDANTS

9.     RCM is a Delaware limited liability company with its principal place of business in Houston, Texas.

10.     Betanabhatla is a resident of Houston, Texas.

## FACTUAL ALLEGATIONS

**A.  Background.**

11.     RCM is an investment adviser that Betanabhatla started in approximately 2016. Betanabhatla controls RCM and its decision making, and he is the company's owner, managing partner, and chief investment officer.  RCM operates out of Betanabhatla's personal residence and has no other employees.

12.     In February 2019, RCM registered with the SEC as an exempt reporting investment adviser.  In October 2020, RCM filed its final report as an exempt reporting adviser.

3

13.     RCM's advisory clients are private investment funds that Betanabhatla also formed and manages: Ramas Energy Capital I, L.P., Ramas Energy Capital III, L.P., and Ramas Energy Capital IV, L.P. ("Fund I,"  Fund III," and "Fund IV," respectively).  Ramas Energy Capital II, L.P. ("Fund II") was set up but did not launch.

14.     Betanabhatla formed each fund as a special purpose vehicle to invest in one portfolio company in the oil and gas industry, with each fund targeting a different portfolio company.  Investors in Funds I, III, and IV have all suffered, or are expected to suffer, complete or substantial losses.

15.     Betanabhatla and RCM provided investment advice to RCM's clients (Funds I, III, and IV) for compensation in the form of fees based on assets under management, and they were engaged in the business of advising such clients as to the advisability of investing in, purchasing, or selling securities.

16.     Betanabhatla was the person who provided all investment advisory services to RCM's clients.  Betanabhatla's source of compensation was advisory fees the funds paid RCM. Betanabhatla's state of mind is imputed to RCM, an entity he controls.

**B.  Fund IV.**

17.     On or about August 9, 2019, Betanabhatla formed his fourth private investment fund, Fund IV.  RCM is Fund IV's investment adviser and investment manager and, acting through Betanabhatla, provides advisory services to Fund IV in exchange for a fee based on the fund's assets under management.

18.     Fund IV was established as a special purpose vehicle to make equity investments in the Portfolio Company.  The Portfolio Company is a privately-held oil and gas exploration and

production company based in Houston, Texas.  The Portfolio Company's business plan was focused on developing oil and gas leasehold interests in Texas.

19.     On or about August 22, 2019, Betanabhatla executed an agreement with the Portfolio Company that required Fund IV to invest $10 million in the Portfolio Company within ten business days of the agreement's August 22, 2019 effective date, and an additional capital contribution of at least $15 million within 90 business days of the effective date, for a total of $25 million.  The $25 million investment would be used to fund the Portfolio Company's initial development drilling program, further acreage leasing, and general and administrative expenses.

20.     Because Betanabhatla had promised the Portfolio Company that Fund IV would invest $25 million within 90 business days, Defendants were under pressure to raise funds from investors quickly or risk breaching the agreement.  Fund IV was also Betanabhatla's next and only new project, and Betanabhatla's personal compensation depended on him raising money for the new fund.

21.     Defendants actively solicited investors to purchase limited partnership interests in Fund IV.  Defendants made the solicitations using written offering materials, including a Summary of Principal Terms ("Offering Memorandum"), a project investment committee presentation ("Investor Presentation"), a subscription agreement ("Subscription Agreement"), and the fund's Amended and Restated Agreement of Limited Partnership ("LPA").  Betanabhatla also solicited potential investors in emails and on phone calls.  Betanabhatla had final approval and authority over these written offering materials and communications.

22.     The limited partnership interests that Defendants offered and sold were investment contracts, and thus securities, under Section 2(a)(1) of the Securities Act and Section

5

3(a)(10) of the Exchange Act.  Fund IV is a pooled investment vehicle, and investors were solicited to purchase limited partnership interests with money that would be pooled in Fund IV. Limited partners did not exercise any control or management over Fund IV or its investments, and the investors were entirely dependent upon, and expecting to profit solely from, the expertise and efforts of others.  Limited partners were merely passive participants seeking an investment return from a common enterprise.

23.     Despite seeking investments from approximately 20 potential investors, Defendants obtained only one investor for Fund IV.  On December 3, 2019, an investor in Austin, Texas ("Investor 1") executed a subscription agreement with Fund IV to purchase $1 million of limited partnership interests.  On December 31, 2019, Investor 1 wired $1,006,603 million to a bank account in Fund IV's name to fund the purchase and initial asset management fees.

**C.  Defendants Defrauded Investor 1.**

24.     Defendants made material misrepresentations and omissions to Investor 1 in connection with the offer, purchase, and sale of the Fund IV limited partnership interests.

**a.  False claims about raising funds.**

25.     On October 17, 2019, Betanabhatla emailed the Investor Presentation and a related financial model to Investor 1.  In his email, Betanabhatla represented to Investor 1 that:

- RCM "has formed a special purpose vehicle ("[Fund IV]") for the purpose of capitalizing [the Portfolio Company]…"

- "Since closing, Ramas has invested $25MM of a total $50MM equity commitment.  Ramas is presently seeing [sic] to raise an additional $25MM of equity capital in order to meet its $50MM equity commitment…."

- "Equity invested to date has been used to fund [the Portfolio Company's] development drilling program as well as [the Portfolio Company's] acreage leasing program."

26.     On or about November 18, 2019, Betanabhatla had a telephone call with Investor 1 about the investment.  Betanabhatla told Investor 1 that Fund IV had already raised $25 million for the fund.  Betanabhatla further told Investor 1 that his investment would be part of the last investment dollars raised to meet the $50 million equity commitment to the Portfolio Company.

27.     These representations (identified in Paragraphs 25 through 26) were false.  Fund IV had not raised *any* funds from other investors.  Fund IV had also not contributed any amount of capital to the Portfolio Company, much less an equity investment sufficient to fund the Portfolio Company's development drilling and acreage leasing programs.

28.     Betanabhatla was the sole person conducting the Fund IV offering, and he knew that he had not raised funds from other investors or invested them in the Portfolio Company

29.     These misrepresentations were material, because a reasonable investor would consider the fact that the fund had not actually raised funds from other investors or deployed capital towards its portfolio company important in deciding whether to invest.

**b. Misappropriation of investor funds.**

30.     Defendants represented to Investor 1 that Fund IV would use investor funds to

make equity investments in the Portfolio Company.

31.     As alleged above, Betanabhatla emailed the Investor Presentation to Investor 1 on October 17, 2019, and he had a phone call with him on or about November 18, 2019.  On November 22, 2019, Betanabhatla also emailed the Offering Memorandum, the Subscription Agreement, and the LPA to Investor 1.

32.     The Offering Memorandum represents that "Fund [IV] has been established as a special purpose vehicle to make a line of equity investment in [the Portfolio Company]…."

33.     The Investment Presentation describes and analyzes the Portfolio Company as Fund IV's only portfolio company, and states that the Portfolio Company will be capitalized with an equity commitment using funds raised for Fund IV.

34.     The LPA provides that the fund "has been organized for the object and purpose of conducting a line of equity investment in [the Portfolio Company], and engaging in those activities necessary, incidental or ancillary thereto."

35.     Betanabhatla's October 17, 2019 email to Investor 1 states that RCM "has formed a special purpose vehicle ("[Fund IV]") for the purpose of capitalizing [the Portfolio Company]…."

36.     During his November 18, 2019 phone call with Investor 1, Betanabhatla told Investor 1 that his investment would be used towards the initial $50 million equity commitment to the Portfolio Company.

37.     These representations (in Paragraphs 30 through 36 above) were false.  Fund IV never made a single equity investment in the Portfolio Company.  After receiving the $1 million from Investor 1 on December 31, 2019 -- the only investment ever made in Fund IV --

Defendants immediately misused and misappropriated most of those funds to try and salvage an investment made by one of Defendants' other funds.

38.    Rather than investing Investor 1's funds in the Portfolio Company as represented, on January 6, 2021, Betanabhatla caused Fund IV to transfer approximately $700,000 of the $1 million to an unrelated oil and gas company that was not mentioned or disclosed anywhere in the offering materials ("Undisclosed Company").  The Undisclosed Company was a portfolio company connected to Fund III, an earlier RCM-managed private fund.  The Undisclosed Company was struggling and running out of money.

39.    Betanabhatla then used approximately $279,000 of the remaining balance of the investor's $1 million investment to pay Fund IV's legal costs, drawing Fund IV's account balance down to approximately $21,000.  Six months later, in June 2020, Betanabhatla transferred the last $21,000 to the Undisclosed Company as well.

40.    Defendants misrepresented to Investor 1 that Fund IV would use investor funds to invest in the Portfolio Company.  At a minimum, Defendants' omission that Fund IV would transfer investor funds to the Undisclosed Company -- a company that was not mentioned or disclosed in the offering materials -- was highly misleading in light of the other statements Defendants made about the use of proceeds and the fund's investment objective.

41.    Betanabhatla controlled the disbursement of funds from Fund IV, and he knew that he was misusing them for a purpose that was not disclosed to Investor 1 and that was not authorized by the offering materials.

42.    These misrepresentations were material, because a reasonable investor would consider the fact that the offering proceeds would not be used for the represented investment

9

purpose important in deciding whether to invest in the offering.

### c. False claims about the industry expert.

43.     During their November 18, 2019 telephone call, Betanabhatla also told Investor 1 that a well-known and respected energy investor and former Chief Operating Officer of a major energy company that Betanabhatla identified by name ("Industry Expert") was involved in Fund IV and supported the investment.  Investor 1 knew and had confidence in the Industry Expert.

44.     Betanabhatla also identified himself and the Industry Expert by name as the two principals for the fund in the Offering Memorandum and the LPA.

45.     These representations (in Paragraphs 43 through 44 above) were false.  The Industry Expert was not involved in Fund IV, and he did not support the investment in the Portfolio Company.

46.     Betanabhatla was the sole person conducting the Fund IV offering, and he knew that the Industry Expert was not involved in Fund IV and had not authorized Betanabhatla to use his name to promote Fund IV or its investment in the Portfolio Company.

47.     These misrepresentations were material, because a reasonable investor would consider the fact that the fund was not being offered and promoted by the persons represented important in deciding whether to invest in the offering.

### D. Defendants Violated Fund IV's Investment Purpose.

48.     As alleged above, Fund IV's stated purpose was to make an equity investment in the Portfolio Company.

49.     Instead, Defendants caused Fund IV to transfer the bulk of its sole investor's $1 million investment to the Undisclosed Company within a week of the investment, and another $21,000 to the Undisclosed Company six months later.

50.     As Betanabhatla knew, investing in the Undisclosed Company was not consistent with the stated purpose of Fund IV and was not within Fund IV's stated investment guidelines and objectives.

51.     The Undisclosed Company was a portfolio company of a different RCM-managed fund, Fund III.  Fund III, according to Betanabhatla, was an approximately $32 million fund that had previously made an approximately $27 million investment in the Undisclosed Company.

52.     Defendants caused the transfers from Fund IV to the Undisclosed Company.  At that time, Undisclosed Company was struggling and running out of money which consequently placed Defendants' other fund (Fund III) in financial jeopardy.

53.     Defendants caused Fund IV to transfer the money to the Undisclosed Company and later claimed that the transfer was an equity investment.  However, no investment interest was documented, and neither Fund IV nor Investor 1 received any benefit in return for the transfer.  The Undisclosed Company is no longer operating, and, upon information and belief, any purported investment by Fund IV in the Undisclosed Company is worthless.

54.     By causing Fund IV to transfer funds to the Undisclosed Company, Defendants breached their fiduciary duties to Fund IV.  Defendants' actions violated Fund IV's investment mandate, constituted a misuse of fund assets, and improperly favored Fund III (another RCM-managed fund) over Fund IV.

55.     Defendants' breach of fiduciary duties was material.  Defendants transferred most of the fund's assets to an entirely different company rather than investing in the portfolio company represented in the fund's offering and organizational documents.  This misconduct resulted in a total loss to Fund IV (and its investor).

## FIRST CLAIM FOR RELIEF

### Violations of Sections 206(1) and (2) of the Advisers Act
### (against both Defendants)

56.     The SEC incorporates by reference each and every allegation contained in the paragraphs above.

57.     By engaging in the conduct alleged above, Defendants, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, while acting as investment advisers within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)], have: (a) employed a device, scheme, or artifice to defraud a client or prospective client; and/or (b) engaged in a transaction, practice, or course of business which operated as a fraud or deceit upon a client or prospective client.

58.     With regard to the violations of Section 206(1) of the Advisers Act, Defendants engaged in the conduct intentionally or with severe recklessness.  With regard to the violations of Section 206(2), Defendants engaged in the conduct at least negligently.

59.     By reason of the foregoing, Defendants have violated, and unless enjoined will continue to violate, Sections 206(1) and (2) of the Advisers Act [15 U.S.C. §§ 80b-6(1)-(2)].

## SECOND CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder
### (against both Defendants)

60.     The SEC incorporates by reference each and every allegation contained in the paragraphs above.

61.     By engaging in the conduct alleged above, Defendants, directly or indirectly, in connection with the purchase or sale of securities, by use of any means or instrumentality of interstate commerce or of the mails or of any facility of any national securities exchange:  (a) employed a device, scheme, or artifice to defraud; and/or (b) made an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

62.     Defendants engaged in this conduct intentionally or with severe recklessness.

63.     By reason of the foregoing, Defendants have violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF

### Violations of Section 17(a) of the Securities Act
### (against both Defendants)

64.     The SEC incorporates by reference each and every allegation contained in the paragraphs above.

65.     By engaging in the conduct alleged above, Defendants, directly or indirectly, in the offer or sale of a security, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails have: (a) employed a device, scheme, or artifice to defraud; and/or (b) obtained money or property by means of an untrue

statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

66.     With regard to the violations of Section 17(a)(1) of the Securities Act, Defendants engaged in the conduct intentionally or with severe recklessness.  With regard to the violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act, Defendants acted at least negligently.

67.     By reason of the foregoing, Defendants have violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q].

## FOURTH CLAIM FOR RELIEF

**Violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder
(against both Defendants)**

68.     The SEC incorporates by reference each and every allegation contained in the paragraphs above.

69.     By engaging in the conduct alleged above, Defendants, directly or indirectly, through the use of the mails or any means or instrumentality of interstate commerce, while acting as investment advisers within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)], engaged in an act, practice, or course of business that was fraudulent, deceptive, or manipulative.

70.     Fund IV is a "pooled investment vehicle" as defined in Rule 206(4)-8(b) [17 C.F.R. § 275.206(4)-8(b)].

71.     While acting as an investment adviser to Fund IV, Defendants:  (a) made an untrue statement of a material fact or omitted to state a material fact necessary to make the

statements made, in the light of the circumstances under which they were made, not misleading, to an investor or prospective investor in the Fund; and/or (b) engaged in an act, practice, or course of business that was fraudulent, deceptive, or manipulative with respect to an investor or prospective investor in the Fund.

72.     As a result, Defendants have violated and, unless enjoined will continue to violate, Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## JURY TRIAL DEMAND

The SEC demands a trial by jury on all issues that may be so tried.

## RELIEF REQUESTED

Therefore, the SEC respectfully requests that this Court:

(a)     Permanently enjoin Defendants from violating Sections 206(1), (2) and (4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), (2) and (4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8], Section 17(a) of the Securities Act [15 U.S.C. § 77q], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

(b)     Permanently enjoin Betanabhatla from, directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any securities, provided, however, that such injunction shall not prevent him from purchasing or selling securities for his own personal account;

(c)     Order Defendants to disgorge, on a joint and several basis, all ill-gotten gains obtained as a result of the conduct described herein, plus prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(g) and 78u(d)(7)];

(d)      Order Defendants to pay civil penalties pursuant to Section 20(d) of the Securities

Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and

Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)];

(e)      Grant such further relief as this Court may deem just and proper.


Dated: September 1, 2022                  Respectfully submitted,

                                         /s/ Keefe M. Bernstein
                                         Keefe M. Bernstein
                                         Attorney-in-Charge
                                         Texas Bar No. 24006839
                                         S.D. Texas Bar No. 24448
                                         Securities and Exchange Commission
                                         801 Cherry Street, Suite 1900
                                         Fort Worth, TX 76102
                                         (817) 900-2607 (phone)
                                         (817) 978-4927 (facsimile)
                                         bernsteink@sec.gov

                                         Counsel for Plaintiff
                                         Securities and Exchange Commission